# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 14 CR 155-1, 4 |
| v. | ) | |
| | ) | Hon. Amy J. St. Eve |
| TOBY JONES and KELSEY JONES | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants Toby Jones and Kelsey Jones (collectively, "Defendants") object to the admission of certain evidence in connection with the conspiracy charged in Count Ten of the Third Superseding Indictment. (R. 268, 270.) Specifically, Defendants object to the government's use of the March 27 and April 2, 2014 shootings against Kelsey Jones and Toby Jones, respectively. For the following reasons, the Court denies Defendants' objections and admits the evidence of both shootings against both Defendants as evidence of the conspiracy charged in Count Ten.

## BACKGROUND

On September 17, 2015, a grand jury returned a fifteen-count Third Superseding Indictment (the "Indictment") against Toby Jones, Kelsey Jones, and Mario Whitfield. (R. 216.) The Indictment charges Toby Jones, also known as "Big Red," "Slick," and "Smitty," in twelve of the fifteen counts; Kelsey Jones, also known as "Little Mo," in five counts; and Mario Whitfield, also known as "Rio" and "Smoke," in one count. Specifically, Count One charges Toby Jones and Kelsey Jones with conspiring with others to knowingly and intentionally possess with the intent to distribute and to distribute a controlled substance—namely, cocaine base—in violation of 21 U.S.C. § 846. Count Two charges Toby Jones with knowingly and intentionally

distributing cocaine base on or about December 17, 2013, in violation of 21 U.S.C. § 841(a)(1). Count Three charges him with knowingly and intentionally distributing cocaine base on or about December 30, 2013. Count Four charges him with knowingly and intentionally distributing cocaine base on or about January 15, 2014. Count Five charges him with knowingly and intentionally distributing cocaine base on or about February 4, 2014. Similarly, Count Six charges him with knowingly and intentionally distributing cocaine base on or about February 25, 2014. Count Seven charges both Toby and Kelsey Jones with knowingly and intentionally distributing cocaine base, on or about March 19, 2014. Count Eight charges Toby Jones with knowingly and intentionally distributing cocaine base on or about March 25, 2014. Count Nine charges Toby Jones with knowingly possessing a firearm in furtherance of a drug trafficking crime, as charged in Count Eight, in violation of 18 U.S.C. § 924(c).

Count Ten charges Toby and Kelsey Jones with conspiring to kill and attempt to kill another person and to knowingly cause bodily injury to another person, with the intent to retaliate against any person for providing to a law enforcement officer information regarding the commission and possible commission of a federal offense, in violation of 18 U.S.C. § 1513. Count Eleven charges Toby Jones with attempting to kill another person with the intent to retaliate against any person for providing to a law enforcement officer information related to the commission and possible commission of a federal offense, on March 27, 2014, in violation of 18 U.S.C. § 1513(a)(1)(B). Count Twelve charges Toby Jones with knowingly using a firearm during and in relation to a crime of violence, namely the conspiracy to murder a federal informant with the intent to retaliate, as charged in Count Ten, and the attempted murder of a federal informant with the intent to retaliate, as charged in Count Eleven, on March 27, 2014, in violation of 18 U.S.C. § 924(c). Count Thirteen charges Kelsey Jones with attempting to kill

another person with the intent to retaliate against any person for providing to a law enforcement officer information related to the commission and possible commission of a federal offense, on April 2, 2014, in violation of 18 U.S.C. § 1513(a)(1)(B). Count Fourteen charges Kelsey Jones with knowingly using a firearm during and in relation to a crime of violence, namely the conspiracy to murder a federal informant with the intent to retaliate, as charged in Count Ten, and the attempted murder of a federal informant with the intent to retaliate, as charged in Count Thirteen, on April 2, 2014, in violation of 18 U.S.C. § 924(c).

Finally, Count Fifteen charges Mario Whitfield with assisting Toby Jones to hinder and prevent his apprehension, trial, and punishment, knowing that he had committed an offense against the United States, in violation of 18 U.S.C. § 3.[1]

At a December 21, 2015 plea hearing, Toby Jones pled guilty to Counts One through Seven. (R. 263, 264.) Additionally, Toby Jones waived his right to a trial by jury for the remaining Counts Eight through Twelve. (R. 265.) Mario Whitfield also waived his right to a trial by jury for Count Fifteen at the December 21 plea hearing. (R. 262.) Kelsey Jones is exercising his right to a jury trial. All Defendants are proceeding to trial.

## ANALYSIS

Count Ten charges Toby Jones and Kelsey Jones with conspiracy to murder a confidential informant ("CI") with the intent to retaliate against the CI for providing information to federal law enforcement in connection with a narcotics conspiracy. The charge involves two separate shootings at 464 N. Austin Boulevard, the CI's apartment building: 1) a March 27, 2014 shooting of Kensha Barlow, and 2) an April 2, 2014 shooting of the CI. It is the government's

---

[1] The Indictment also contains a forfeiture allegation against Toby and Kelsey Jones.

theory that Toby Jones shot Kensha Barlow through Barlow's apartment door on March 27, 2014, mistakenly believing Barlow was the CI.

Toby Jones, charged with the March 27, 2014 shooting in Count Eleven, objects to the admission of the April 2, 2014 shooting in his bench trial, while Kelsey Jones, charged with the April 2, 2014 shooting in Count Thirteen, objects to the admission of the March 27, 2014 shooting in his jury trial. Kelsey Jones argues that "[t]he [g]overnment's filing presents no facts to support its conclusion that the shooting was part of the charged conspiracy," and "the introduction of such evidence at the jury trial would violate FRE Rule 403." (R. 268 at 2, 3.) Similarly, Toby Jones contends that "the arguments proffered by the government, invite rank speculation as a basis for establishing relevancy of certain proffered evidence. . . . [T]here is no evidence connecting each brother to both shootings." (R. 270 at 1, 10.)

The government explains that it seeks to admit the evidence of both the March 27, 2014 and the April 2, 2014 shooting "against both defendants as circumstantial evidence of the conspiracy charged in Count Ten." (R. 266 at 8.) Specifically, the government asserts that "[c]onsidered against the 'collocation' of other circumstances in this case—defendants are brothers, defendants participated in the underlying narcotics conspiracy together, defendants lived together, defendants were in frequent phone communication with each other between March 26, 2014 and April 2, 2014, defendants together questioned at least one individual regarding the whereabouts of the CI prior to the April 2, 2014 shooting—a jury could reasonably infer that [the March 27, 2014 and April 2, 2014 shootings] were part of a common design or understanding between the defendants to retaliate against the CI." (*Id.* at 9.) The Court agrees.

4

## I.     Conspiracy Legal Standard

"A conspiracy is a 'knowing and intentional agreement between two or more people to fulfill a particular criminal objective.' " *United States v. King*, 627 F.3d 641, 651 (7th Cir. 2010) (quoting *United States v. Kincannon*, 567 F.3d 893, 897 (7th Cir. 2009)).  Specifically, a "[c]onspiracy has two elements: (1) an agreement to commit an unlawful act; and (2) the defendant must have knowingly and intentionally joined that agreement." *United States v. Cruse*, 805 F.3d 795, 811 (7th Cir. 2015) (citing *United States v. Johnson*, 437 F.3d 665, 675 (7th Cir. 2006)).  Proving these elements "is not as difficult as it might sound, as the government need not prove an explicit agreement or an overt act.  It must merely prove an understanding—explicit or implicit—among co-conspirators to work together to commit the offense." *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (citing *United States v. Sanchez*, 251 F.3d 598, 602 (7th Cir. 2001)).  Put differently, "[t]he government can prove these elements with circumstantial evidence[.]" *Cruse*, 805 F.3d at 811; *see also Iannelli v. United States*, 420 U.S. 770, 777, n. 10, 95 S. Ct. 1284, 43 L.Ed.2d 616 (1975) ("The agreement need not be shown to have been explicit.  It can instead be inferred from the facts and circumstances of the case."); *United States v. Smith*, 995 F.2d 662, 666 (7th Cir. 1993) ("[A] conspiracy conviction may be based solely on circumstantial evidence.").  Indeed, this is often necessary, as the "formalities of an agreement are . . . usually lacking since the mark of a successful conspiracy is secrecy." *United States v. Madison*, 689 F.2d 1300, 1310 (7th Cir. 1982).

Although "circumstantial cases can provide constitutionally sufficient proof beyond a reasonable doubt," the Seventh Circuit has admonished courts to "carefully consider each inference necessary to prove all elements of the offense." *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013).  There is no "bright line between reasonable and unreasonable inferences

from circumstantial evidence, but there is a line." *Id.* On one hand, "[t]he government may not prove its case . . . with 'conjecture camouflaged as evidence.' " *Id.* (quoting *Piaskowski v. Bett*, 256 F.3d 687, 693 (7th Cir. 2001)). On the other hand, however, "[w]hether the evidence establishes a conspiratorial agreement must ultimately be determined by the totality of the circumstances." *Cruse*, 805 F.3d at 811. The government, for example, can overcome this reasonableness-threshold by relying on circumstantial inferences showing "that the co-conspirators embraced the criminal objective of the conspiracy, that the conspiracy continued towards its common goal, and that there were co-operative relationships." *King*, 627 F.3d at 651 (quoting *United States v. Gilmer*, 534 F.3d 696, 703 (7th Cir. 2008)). Here, the government's proffered evidence falls on the latter side of this "line," not the former.

## II. The Government's Proffered Evidence

The government intends to introduce five categories of evidence to prove the conspiracy in Count Ten: 1) evidence of a narcotics conspiracy and the CI's involvement; 2) evidence of both shootings; 3) evidence of a meeting between Toby Jones, Kelsey Jones, and "MS" after Wesley Fields's March 26, 2014 arrest; 4) evidence of Mario Whitfield's use of a red minivan and the April 2, 2014 shooting; and 5) phone records. This evidence establishes the admissibility of both shootings against both Toby Jones and Kelsey Jones.

### A. The Narcotics Conspiracy Evidence

The government first plans to present evidence that Defendants were involved with others, including Wesley Fields, in a narcotics conspiracy. (*See* R. 266 at 1-2.) Specifically, the government argues that this "evidence will demonstrate that Toby Jones, Kelsey Jones, and Wesley Fields were all participants in a single, armed drug trafficking crew which the CI and federal law enforcement agents targeted through a series of undercover meetings and phone calls

6

in which the CI introduced an undercover agent to Toby Jones, Kelsey Jones, and Wesley Fields." (*Id*.) The Court has already found that the government has established the existence of this conspiracy by a preponderance of the evidence under *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1987). (R. 256.) In addition, Toby Jones pled guilty to the narcotics conspiracy charge. (R. 263.)

This evidence illustrates that Defendants had a relationship with the CI before the April 2, 2014 shooting. Indeed, the CI introduced an undercover agent ("UCA") to Defendants. Law enforcement subsequently arrested Wesley Fields for giving the UCA approximately six ounces of crack cocaine and $400 he had received from Toby Jones in exchange for two firearms. Further, after law enforcement officials arrested Wesley Fields on March 26, 2014, they filed federal narcotics and firearm charges against Toby Jones. (R. 1.) The Complaint setting forth the charges explained the role of the CI and the UCA. The government intends to offer evidence that Toby Jones thereafter immediately began trying to contact and locate the CI.

**B.     The Shootings**

Next, the government plans to present evidence of the March 27, 2014 and April 2, 2014 shootings. (*Id*. at 2-4.) Both shootings occurred at 464 N. Austin Boulevard—the CI's apartment address. (*Id*. at 2.) The government will introduce evidence that the March 27, 2014 shooting occurred approximately ten hours after law enforcement arrested Wesley Fields in connection with his dealings with the CI and the UCA. (*Id*.) The government plans to call the victim, Kensha Barlow[2], to testify at trial. Barlow will identify Toby Jones as the person who shot him through the door of his 464 N. Austin Boulevard apartment. (*Id*.) Barlow will further testify that he does not know Defendants and that the shooter made various statements implying

---

[2] Kensha Barlow testified at a suppression hearing before the Court on September 15, 2015. Barlow's testimony was consistent with the government's representations.

7

that he was not the intended target, such as "It's me . . . Open the fucking door." (*Id.*) Finally, Barlow will testify that the shooter was accompanied by a second individual who (1) was shorter than the shooter, (2) had a dark complexion, (3) had a slight build, and (4) was wearing a hooded sweatshirt drawn around his face. (*Id.* at 10.) Barlow observed both the shooter and the man accompanying him through his apartment door's peephole. The government will introduce evidence that Kelsey Jones fit these descriptive factors on March 27 and April 2, 2014. (*Id.* at 10-11.)

Regarding the April 2, 2014 shooting, the government plans to call the victims, the CI and his brother, who will testify that Kelsey Jones shot them in the back parking lot of the CI's 464 N. Austin Boulevard apartment complex. (*Id.* at 3.) In addition, the victims will testify that Kelsey Jones entered and exited the scene from a red minivan. (*Id.*)

### C. The Meeting After Wesley Fields's Arrest

The government also plans to present evidence of a meeting among Defendants and "MS," the CI's neighbor at 464 N. Austin Boulevard and one of Defendants' drug customers. (*Id.* at 4.) The government submits that this meeting took place after Wesley Fields's March 26 arrest but before the April 2 shooting. (*Id.*) Specifically, the government represents that telephone records will illustrate Defendants' communications with MS during this time period. (*Id.*) The government plans to call MS who will testify that Defendants asked MS to go to 653 N. Austin Boulevard, where Defendants lived together. (*Id.*) MS will state that both Defendants attended the meeting, inquired about the CI's location and car, instructed MS to report back to Defendants if MS saw the CI, and gave MS a bag of heroin at no cost. (*Id.*) MS will further testify that he feared for the CI's safety and, immediately after the meeting, warned the CI that Defendants were looking for him. (*Id.*) Further, the government plans to call the CI who will

testify, in part, that MS warned him that Defendants were looking for him sometime between March 26 and April 2, 2014. (*Id*. at 4, n. 3.) Finally, the government represents that MS will state, and telephone records will corroborate, that Kelsey Jones called MS on the evening of April 2, 2014, just before the April 2 shooting, asking whether there were any cameras in 464 N. Austin Boulevard's back parking lot, where the CI was shot. (*Id*. at 5.)

### D. The Red Minivan

Next, the government plans to present evidence regarding Mario Whitfield and the red minivan he owned and is charged with using in the April 2, 2014 shooting. (*Id*.) The government plans to call the CI's sister-in-law, who was with the CI during the April 2, 2014 shooting. (*Id*.) Specifically, she will testify that Mario Whitfield was driving the red minivan in which Kelsey Jones escaped after shooting the CI on April 2. (*Id*.) Further, the government plans to present evidence that Mario Whitfield helped Toby Jones evade law enforcement officials using the same red minivan during the weeks after the April 2 shooting. (*Id*.)

### E. The Phone Records

Finally, the government plans to present telephone records that illustrate numerous communications among Toby Jones, Kelsey Jones, and Mario Whitfield at and around the time of the April 2 shooting. (*Id*. at 6.)

## III. Both the March 27 and April 2 Shootings Are Admissible Against Both Defendants

In light of the "totality of the circumstances," the government's proffered evidence sufficiently identifies a conspiratorial arrangement connecting both shootings to both Defendants. *Cruse*, 805 F.3d at 811. Specifically, viewing the government's proffered circumstantial and direct evidence in the aggregate, the government has presented a sufficient basis to argue that both Defendants "embraced the criminal objective" to locate and cause bodily

9

harm to the CI; "continued toward [this] common goal" through a number of phone calls, meetings, and shootings; and forged "co-operative relationships" between each other and others to successfully accomplish such unlawful goals—in part due to the CI's work with Defendants and law enforcement. *King*, 627 F.3d at 651. If the jury believes the government's witnesses, it can reasonably infer from these "facts and circumstances of the case" that Defendants forged an illicit agreement to kill and attempt to kill the CI, connecting both the March 27, 2014 and April 2, 2014 shootings to both Defendants. *Iannelli*, 420 U.S. at 777, n. 10.

The Court is not persuaded by Kelsey Jones's arguments to the contrary. He first asserts that "[t]he [g]overnment's filing presents no facts to support its conclusion that the [March 27] shooting was part of the charged conspiracy." (R. 268 at 2.) The proffered evidence, however, implies otherwise: Toby Jones began searching for the CI immediately after law enforcement arrested Wesley Fields and charged Toby Jones with federal offenses on March 26; approximately ten hours later, Toby Jones, accompanied by another individual, shot Kensha Barlow at the CI's apartment complex while making statements implying that Barlow was not the intended target; Kelsey Jones fits Kensha Barlow's physical description of the individual accompanying Toby Jones at the March 27, 2014 shooting; and Toby Jones continued to work with others to learn about and track down the CI for the next week until the CI was eventually shot. The government adequately linked the above circumstances to argue that the March 27, 2014 shooting was connected to both Kelsey Jones and the alleged conspiracy.

Kelsey Jones next contends that Kensha Barlow's physical description of the accompanying individual in the March 27, 2014 shooting is unreliable. (R. 268 at 2.) His argument goes to the weight of this evidence, not its admissibility. The Court observed Kensha Barlow testify to these facts at the September 15, 2015 suppression hearing. Barlow has a basis

10

to give such testimony.  Moreover, whether or not Kelsey Jones was the accompanying individual is not determinative of the issue.  In other words, the proffered evidence connects Kelsey Jones to the March 27, 2014 shooting, regardless of whether he was present at the shooting.  Indeed, the March 27, 2014 shooting became admissible against Kelsey Jones the moment he joined the charged criminal conspiracy.  *See United States v. Arrellano*, 757 F.3d 623, 634 (7th Cir. 2014) ("[Defendant] complains that many of the statements admitted against him were made before he allegedly joined the conspiracy.  But 'it is well established that a defendant who joins a conspiracy [takes] the conspiracy as he found it.  When he joined and actively participated in it he adopted the previous acts *and declarations* of his fellow co-conspirators.") (quoting *United States v. Adamo*, 882 F.2d 1218, 1230-31 (7th Cir. 1989) (emphasis in original)).  Thus, the March 27, 2014 shooting is admissible against Kelsey Jones to prove the conspiracy charged in Count Ten.

Toby Jones's arguments meet the same fate.  Specifically, Toby Jones contends that "the government seeks to introduce evidence of each brother's alleged role in two separate shootings, and use each brother's alleged roles in separate shootings against the other, despite a complete lack of connections between the two events."  (R. 270 at 10.)  To reach this conclusion, however, Toby Jones fails to conduct a "holistic assessment" of the evidence.  *Cruse*, 805 F.3d at 811 (quoting *United States v. Brown*, 726 F.3d 993, 1002 (7th Cir. 2013)).  Instead, he erroneously challenges each piece of the government's evidence as individually insufficient to hurdle the requisite threshold.

Toby Jones, for example, argues that the government's narcotics conspiracy evidence amounts to nothing more than a propensity argument.  The narcotics conspiracy evidence, however, is proof of a prior relationship among Defendants and the CI.  Further, it is

11

circumstantially probative of Defendants' motives to commit the crime charged in Count Ten given that the CI's actions contributed to law enforcement charging Defendants. Neither rationale runs counter to propensity prohibitions. Moreover, Toby Jones is proceeding with a bench trial; thus, his propensity arguments fall flat.

Next, Toby Jones asserts that the government inappropriately focuses on the fact that Defendants live together and are brothers, arguing that "a defendant cannot be convicted of conspiracy simply because he had close personal relationships with the conspirators." (R. 270 at 7.) Although this may be true, the government's proffered evidence goes far beyond "simply" relying on this relationship, as described in more detail above. (*Id.*) Toby Jones also challenges his phone contact with his co-conspirators, arguing that "phone contact between alleged co-conspirators *alone* is wholly deficient in establishing the conspiracy itself." (*Id.* at 8, citing *Goetzke v. Ferro Corp.*, 280 F.3d 766, 778 (7th Cir. 2002) (emphasis in original).) The government, however, is not relying on phone calls alone. As with the previous challenge, this argument fails to consider the government's proffered evidence as a whole. Indeed, a comprehensive review illustrates that the charged conspiracy does not depend on "phone contact . . . *alone*." (*Id.* (emphasis in original).)

In addition, Toby Jones challenges the government's use of Mario Whitfield to connect Toby and Kelsey Jones in the conspiracy, contending that "one would expect if the government really believed its own theory would be that Mario Whitfield is charged as part of the same conspiracy. He has not been charged in this way." (*Id.* at 8-9.) "It is the grand jury's statement of the existence of the conspiracy agreement," however, "rather than the identity of those who agree" that matters. *United States v. Townsend*, 924 F.3d 1385, 1389 (7th Cir. 1991) (citation and quotation marks omitted). Indeed, "the [g]overnment is permitted to allege in an indictment

. . . that, in addition to the defendants named in a conspiracy count, the defendants conspired with others known and unknown to the grand jury." *Id*. (citations and quotation marks omitted); *see also Cruse*, 805 F.3d at 811 ("[T]he *agreement* is the essential evil at which the crime of conspiracy is directed.") (emphasis in original). Thus, the fact that Count Ten does not charge Mario Whitfield is irrelevant.

Finally, Toby Jones argues that "[t]here are no photographs, no surveillance observations, and no other evidence that the Joneses were even in the area together on the respective dates." (R. 270 at 9.) As discussed earlier, however, the government is not required to introduce this kind of evidence. Both shootings can be admissible against both Defendants, regardless of whether they were in the same area together during each shooting given the charged conspiracy. As a result, Toby Jones's piecemeal approach fails to consider that the government's proffered evidence, in the aggregate, amounts to more than mere conjecture. Indeed, in light of the "totality of the circumstances," the government's proffered circumstantial and direct evidence reasonably supports the charged conspiracy. Both shootings are also acts committed during and in furtherance of the conspiracy charged in Count Ten. Thus, both the March 27, 2014 and April 2, 2014 shootings are admissible against both Kelsey Jones and Toby Jones, respectively, to prove the existence of the conspiracy charged in Count Ten and each Defendant's role in that conspiracy.

**IV.**     **Federal Rule of Evidence 403 Does Not Render the Shootings Inadmissible**

Finally, both Defendants argue that admitting both shootings against both Defendants would be overly prejudicial under Federal Rule of Evidence 403. (R. 268 at 3; R. 270 at 1.) Each shooting's probative value, however, dictates otherwise. "Rule 403 permits a district court to 'exclude relevant evidence if its probative value is substantially outweighed by a danger of . . .

unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.' " *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) (quoting Fed. R. Evid. 403). Evidence is "probative" when it has "any tendency to make a fact more or less probable than it would be without the evidence." *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014) (quoting Fed. R. Evid. 401). Importantly, "most relevant evidence is, by its very nature, prejudicial;" therefore, "evidence must be *unfairly* prejudicial to require exclusion." *Boros*, 668 F.3d at 909. (emphasis in original) (citing *United States v. Hanna*, 630 F.3d 505, 511 (7th Cir. 2010)). Courts consider evidence's probative and prejudicial value on a sliding scale: "The more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote." *Id*. (citing *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008)).

Here, the March 27, 2014 and April 2, 2014 shootings are probative of each Defendant's actions in furtherance of the charged agreement to locate and harm the CI. Specifically, the fact that both alleged co-conspirators committed shootings at the CI's apartment complex within days of law enforcement charging Wesley Fields based on his dealings with the CI and the UCA tends to make Defendants' charged criminal agreement "more . . . probable than it would be without the evidence." *Gomez*, 763 F.3d at 853 (quoting Fed. R. Evid. 401). Indeed, these shootings provide evidence of the attempts to accomplish the very goal of the charged conspiratorial arrangement: to harm and retaliate against the CI. The Court acknowledges that the two shootings are inherently prejudicial to both Defendants. They are not, however, "*unfairly* prejudicial." *Borros*, 668 F.3d at 909. The jurors will already be aware that both Defendants possessed and used firearms, as they will hear eyewitness testimony identifying Toby Jones and

14

Kelsey Jones in the shootings with which they are charged. *United States v. Adams*, 628 F.3d 407, 416 (7th Cir. 2010) ("In light of the balancing test required under Rule 403 . . . the district court did not err by determining the probative value of the evidence to be greater than its prejudicial effect. The jurors were likely already aware that [Defendant] had a mug shot and they were most certainly aware of his extensive prior contact with police from his trial stipulations of the various periods of time spent incarcerated.") As a result, each shooting's probative link in the alleged conspiracy-chain outweighs the prejudice it presents to Defendants. Furthermore, as noted above, Toby Jones is proceeding with a bench trial. Consequently, his Rule 403 concerns are unfounded. *See United States v. Lim*, 57 Fed. App'x. 701, 704 (7th Cir. 2003) ("[W]e reject [Defendant's] Rule 403 claims, which are inapposite in a bench trial, where there is no risk of jury prejudice.") (citing *United States v. Shukri*, 207 F.3d 412, 419 (7th Cir. 2000) ("In a bench trial, we assume that the district court was not influenced by evidence improperly brought before it unless there is evidence to the contrary.")). Thus, Federal Rule of Evidence 403 does not render the shootings inadmissible.

**CONCLUSION**

For the foregoing reasons, the Court denies Defendants' objections and finds both the March 27, 2014 and April 2, 2014 shootings admissible against both Kelsey Jones and Toby Jones, respectively. The evidence is directly relevant to the existence of Toby Jones's and Kelsey Jones's conspiratorial agreement to commit the unlawful acts and to their respective roles in the conspiracy.

**DATED: January 13, 2016**                          **ENTERED**

                                                                                  AMY J. ST. EVE
                                                                                   U.S. District Court Judge